# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EUNICE COLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No: 15 C 2337 |
| v. ) | |
| ) | Magistrate Judge Daniel G. Martin |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Eunice Cole ("Cole") seeks review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Cole asks the Court to reverse and remand the ALJ's decision, and the Commissioner seeks an order affirming the decision. For the reasons set forth below, the ALJ's decision is reversed and the case is remanded for further proceedings consistent with this opinion.

### I. BACKGROUND

Cole was born on August 21, 1950 and has a history of degenerative joint disease of the right shoulder and cervical spine, diabetes, obesity, and heart conditions. Cole completed high school and previously worked as a commercial truck driver. Cole alleges he became totally disabled on July 12, 2008 because of a heart condition, high blood pressure, arthritis, and diabetes. Cole's insured status for DIB purposes expired on June 30, 2013, which means Cole had to show he was disabled on or before that date in order to be eligible for DIB.

Under the standard five-step analysis used to evaluate disability, the ALJ found that Cole had not engaged in substantial gainful activity between July 12, 2008, the alleged onset date, through June 30, 2012, the date last insured (step one); his degenerative joint disease of the right shoulder and cervical spine, diabetes mellitus, and obesity were severe impairments (step two); but that his degenerative joint disease of the right shoulder and cervical spine, diabetes mellitus,

and obesity did not qualify as a listed impairment (step three).  The ALJ determined that Cole retained the residual functional capacity (RFC) to perform medium work, except that he could engage in only occasional, non-repetitive overhead reaching with the right extremity and he has been insulin dependent since April 20, 2013 .  Given this RFC, the ALJ concluded that Cole was unable to perform his past relevant work as a tractor-trailer driver (step four).  The ALJ then found that jobs existed in significant numbers in the national economy that Cole could perform considering his age, education, work experience, and residual functional capacity, including dining room attendant (10,000 jobs in Illinois), laundry laborer (4,000 jobs in Illinois), and patient transporter (1,000 jobs in Illinois) (step five).  The Appeals Council denied Cole's request for review on January 28, 2015.  Cole now seeks judicial review of the final administrative decision of the Acting Commissioner, which is the ALJ's decision.  O'Connor-Spinner v. Astrue, 627 F.3d 614, 618 (7th Cir. 2010).

## II.  DISCUSSION

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled within the meaning of the Act, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, see 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform his former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience.  20 C.F.R. § 404.1520(a) (2004); Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000).  These steps are to be performed sequentially.

20 C.F.R. § 404.1520(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." Clifford, 227 F.3d at 868 (quoting Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985)).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. Stevenson v. Chater, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). An ALJ's credibility determination should be upheld unless it is patently wrong. Schaaf v. Astrue, 602 F.3d 869, 875 (7th Cir. 2010). A reviewing court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. Estok v. Apfel, 152 F.3d 636, 638 (7th Cir. 1998).

The ALJ denied Cole's claim at step five, finding that Cole retains the residual functional capacity to perform a significant number of jobs in the national economy. Cole raises six main challenges to the ALJ's decision: (1) the ALJ improperly evaluated the evidence relative to the date last insured; (2) the ALJ ignored evidence of Cole's cardiac impairment; (3) the ALJ failed to adequately consider the combined effects of Cole's impairments; (4) the ALJ failed to consult an expert regarding medical equivalence; (5) the RFC finding is not supported by substantial evidence; and (6) the hypothetical questions posed to the VE failed to account for all of Cole's limitations. The Court agrees that errors at step three and in the ALJ's RFC analysis and hypothetical questions posed to the VE based on that RFC require remand.

### A. Date Last Insured

To qualify for DIB, Cole must show that the disability arose while he was insured for benefits. Liskowitz v. Astrue, 559 F.3d 736, 740 (7th Cir. 2009). Cole's date last insured for

purposes of his DIB application was June 30, 2012.  Cole must establish that he was disabled by June 30, 2012 to obtain DIB.  Cole argues that the ALJ failed to comply with Social Security Ruling (SSR) 83-20, as interpreted in Parker v. Astrue, 597 F.3d 920, 924-25 (7th Cir. 2010), which requires an ALJ to first determine whether a claimant is presently disabled and then retain a medical expert to opine on whether the claimant was disabled before his date last insured.

SSR 83-20 and Parker do no support Cole's argument.  The Commissioner correctly argues that SSR 83-20 contemplates certain procedures to establish onset of disability after a claimant is found disabled, but it does not provide guidance for situations when a claimant is not disabled. "SSR 83-20 addresses situations in which an ALJ finds that a person is disabled as of the date she applied for disability insurance benefits, but it is still necessary to determine whether the disability arose prior to an even earlier date–normally, when the claimant was last insured."  Eichstadt v. Astrue, 534 F.3d 663, 666 (7th Cir. 2008).  The Eichstadt court explained:

> The Commissioner reads 83-20 as urging the ALJ to seek a medical opinion only after a finding of disability has been made.  We give some deference to the Commissioner's interpretations, and we find this one to be entirely reasonable.  The ALJ in this case found that Eichstadt was not disabled at any point before December 31, 1987 [her date last insured].  With no finding of disability, there was no need to determine an onset date.

Id. at 667.  Because the ALJ here found that Cole was not disabled at any point before his date last insured of June 30, 2012, there was similarly no need to seek a medical opinion to determine an onset date.

In Parker, the Seventh Circuit criticized the ALJ's contradictory statements about when the claimant's mental impairments surfaced relative to her date last insured.  Parker, 597 F.3d at 934. The Parker court provided two acceptable approaches to determine whether the claimant's mental limitations were disabling prior to her date last insured: (1) the ALJ should decide if "the plaintiff's ailments are at present totally disabling and, if so . . . retain[] a medical expert to estimate how grave her condition was" as of the date last insured; or (2) consider all relevant evidence, including

evidence regarding plaintiff's condition at present, and determine directly whether the plaintiff was totally disabled by the date last insured. Id. at 925. In this case, the ALJ followed the second approach and directly determined that Cole was not totally disabled by his date last insured after considering all the relevant evidence. Accordingly, the ALJ did not error in failing to determine whether Cole is presently disabled and then consult a medical expert to opine on the date of onset.

B.   **Cardiac Condition**

Cole next contends that the ALJ did not analyze any of the medical evidence documenting his cardiac impairments, namely, his coronary artery disease, dyslipidemia, hypertension and hypertensive cardiovascular disease. An ALJ need not "discuss every piece of evidence in the record and is prohibited only from ignoring an entire line of evidence that supports a finding of disability." Jones v. Astrue, 623 F.3d 1155, 1162 (7th Cir. 2010).

In 2004, Cole had a coronary angiogram with angioplasty and the insertion of two blood vessel stents. (R. 365). Three electrocardiograms in October 2009, July 2012, and April 2013 show evidence of an anteroseptal infarct of undetermined age.[1] (R. 286, 316, 366, 387-93). During a four day hospital stay for pancreatitis in April 2013, Cole was diagnosed with hypertensive cardiovascular disease. (R. 364). A CT scan of Cole's abdomen and pelvis on admission revealed atherosclerosis. (R. 366). On discharge, Cole denied having chest pain and was advised to "continue in his regular activities." (R. 366-67). The record further reflects that Cole's hypertension was generally controllable by medication (R. 214, 218, 223, 226, 229, 231, 233, 234, 236), he reported no complaints of chest symptoms during his review of symptoms (R. 211, 216, 220, 224) and on examination, his clinical cardiovascular findings were normal. (R. 212, 217, 221, 225, 229, 230, 231, 232, 233, 236. 265). Chest imaging studies showed normal or mild findings. (R. 305-06,

---

[1] An infarct is an area of necrosis (i.e. irreversible, pathologic death of a portion of an organ) resulting from a sudden insufficiency of blood supply. Stedman's Concise Medical Dictionary (3rd ed., 1997) 439, 583.

366, 382, 385).

Here, the ALJ did not ignore an entire line of evidence. The ALJ acknowledged that Cole alleged impairments of a heart condition and hypertension. (R. 16). The ALJ also referenced the opinion from Cole's treating physician, Dr. Sheng F. Wu, indicating that Cole suffered from heart disease and high blood pressure. (R. 20). Moreover, the ALJ discussed the opinions of the state agency physicians, Drs. Francis Vincent and James Hinchen. (R. 20). Dr. Vincent noted that Cole's hypertension was well controlled. (R. 63). Dr. Hinchen explicitly considered Cole's cardiac catherization and two stent placement in 2004 and his history of hypertension, but noted that Cole's hypertension was well-controlled and his cardiac condition was severe but there was insufficient evidence to evaluate whether Cole met or equaled Listing 4.04 for ischemic heart disease. (R. 70-71). The state agency physicians found no medically determinable impairment and/or insufficient medical evidence prior to the date last insured. Id. By acknowledging Cole's allegations of cardiac impairments and by considering the opinions of the two state agency physicians who found insufficient evidence of a medically determinable cardiac impairment and listing level cardiac impairment, the ALJ adequately addressed Cole's cardiac impairments. Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004) (stating "although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions.").

Cole points out that the state agency physicians offered their opinions before he was diagnosed with arteriosclerosis and hyptentensive cardiovascular disease in April 2013. But Cole offers no arguments related to any specific effects caused by his arteriosclerosis and hyptentensive cardiovascular disease, only that the diagnoses were made. Because Cole has not identified any functional limitation caused by his heart conditions that the ALJ failed to incorporate into the RFC, he has not shown that the ALJ erred in failing to address his cardiac impairments more explicitly in his decision.

C.  **Combination of Impairments**

Cole also contends that the ALJ failed to consider the combined effect of his cardiac, endocrine, and musculoskeletal impairments as well as his obesity. The combined impact of all of a claimant's impairments must be "considered throughout the disability determination process." 20 C.F.R. § 404.1523. This includes the listing decision at step three. M.N. ex rel. Rodriguez v. Colvin, 2014 WL 1612991, at *7 (N.D. Ill. April. 22, 2014). "When determining a claimant's RFC, an ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment." Denton v. Astrue, 596 F.3d 419, 423 (7th Cir. 2010); Golembewski v. Barnhart, 322 F.2d 912, 918 (7th Cir. 2012) (holding once an ALJ finds one or more severe impairments, the ALJ must consider "the *aggregate* effect of this entire constellation of ailments–including those impairments that in isolation are not severe.").

The ALJ considered the combined effect of Cole's impairments. At step three, the ALJ explicitly stated that "[t]hrough the date last insured, the claimant did not have an impairment or *combination of impairments* that met or medically equaled the severity of one of the impairments set forth in the Listing of Impairments." (R. 14) (emphasis added); Steward v. Bowen, 858 F.2d 1295, 1298 (7th Cir. 1988) (stating "it is clear from the ALJ's opinion that he did in fact consider the combined impact of all of Steward's impairments in determining that they neither meet nor equal a listed impairment. The ALJ specifically found that the medical evidence did not establish 'that any of claimant's impairments, *either alone or in combination*, are severe enough to *either meet or equal* the requirements of any impairments listed in Appendix 1 of the Regulations."). The ALJ's statement that he considered the combination of impairments as part of his step three assessment also shows that the ALJ considered the combined effect in assessing RFC. Getch v. Astrue, 539 F.3d 473, 483 (7th Cir. 2008) (holding that the ALJ sufficiently considered the combined impact of claimant's impairments where the ALJ did in fact consider claimant's health problems in the

aggregate at step three and considered all of claimant's symptoms and the objective medical evidence in making the RFC assessment). Here, the ALJ demonstrated adequate consideration of all the evidence in assessing Cole's RFC. (R. 15-20). The ALJ wrote that he gave "careful consideration" to "the entire record" and "considered all symptoms" along with the objective medical evidence. (R. 15); Richison v. Astrue, 462 Fed.Appx. 622, 626 (7th Cir. 2012). Finally, Cole has not shown that his impairments have some "combined effect." Cole has not identified any work-related restrictions caused by his combination of impairments that should have resulted in a more restrictive RFC.

### D.    Step Three

Cole next argues that the ALJ erred by not considering an expert's opinion on medical equivalence at step three. "Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." Barnett v. Barnhart, 381 F.3d 664, 670 (7th Cir. 2004). "[L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996). The social security regulations similarly require that ALJs "consider the opinion given by one or more medical and psychological consultants designated by the Commissioner" at the step three medical equivalence determination. 20 C.F.R. § 404.1526(c).

Here, there is no opinion evidence which provides a sufficient basis for the ALJ's step three medical equivalence finding. The Commissioner argues that the state agency physicians' opinions are evidence supporting the ALJ's step three finding as to medical equivalence. The record before the ALJ contained Disability Determination Explanation forms completed by state agency physicians Francis Vincent, M.D. and James Hinchen, M.D. (R. 61-65, 67-72). It is true that

Disability Determination and Transmittal Forms "conclusively establish that 'consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review.'" Scheck v. Barnhart, 357 F.3d 697, 700 (7th Cir. 2004). Although the state agency physicians' opinions were not discussed at step three, the ALJ did discuss the opinions of the state agency physicians later in his decision. (R. 20); Rice v. Barnhart, 384 F.3d 363, 370 n.4 (7th Cir. 2004) (holding it would be a "needless formality" to require the ALJ to "repeat substantially similar factual analyses" at multiple steps of the sequential evaluation.).

The Commissioner argues that the state agency physicians' findings that the record lacked evidence of impairments that would significantly limit his ability to perform basic work activities necessarily means that there was insufficient evidence that a listing was met or equaled at step three. Even if the ALJ relied on these opinions, as the Commissioner suggests, the opinions are insufficient to support the ALJ's decision regarding equivalency at step three. At step three, the ALJ considered whether Cole had an impairment that was functionally equivalent to Listings 1.02 (major dysfunction of a joint) and 9.00(B)(5) (endocrine disorders) and the effect of Cole's obesity. (R. 15). The ALJ found that Cole's shoulder pain did not equal Listing 1.02, Cole's diabetes did not equal Listing 9.00(B)(5), and Cole's obesity did not cause his conditions to equal a Listing. Id. The Disability Determination Explanation forms do not suggest that either Dr. Vincent or Dr. Hinchen offered an opinion as to whether Cole's shoulder pain, diabetes, or obesity equaled a listed impairment. On initial review, Dr. Vincent found insufficient medical evidence on or before the date last insured to make a medical opinion and that no medically determinable impairment had been established. (R. 63-64). Dr. Vincent's findings do not reach the issue of medical equivalency. On reconsideration review, Dr. Hinchen found medically determination impairments of diabetes and hypertension. (R. 71). Dr. Hinchen then considered Listing 4.04 for ischemic heart disease but found insufficient evidence to evaluate the claim. (R. 71). Dr. Hinchen considered only whether

Cole's heart condition met or equaled the criteria for Listing 4.04 for ischemic heart disease and found insufficient evidence to evaluate the claim. Dr. Hinchen failed to address Listing 1.02 for major dysfunction of a joint, Listing 9.00(B)(5) for diabetes, and the effect of Cole's obesity on his other impairments. Because the state agency physicians did not opine on whether Cole's shoulder pain, diabetes, or obesity equaled a listing, the state agency physicians' opinions are insufficient to support the ALJ's findings regarding equivalency at step three. Williams v. Astrue, 2011 WL 2532905, at *2-3 (S.D. Ind. June 24, 2011). On remand, the ALJ shall obtain expert medical opinion regarding medical equivalence and reconsider his step-three determination accordingly.

### E.    RFC Determination

Cole challenges the RFC assessment as not supported by substantial evidence. An RFC "represents the most that an individual can do despite his or her limitations or restrictions." SSR 96-8p, 1996 WL 374184, at *4 (1996). The ALJ determined that Cole has the residual functional capacity to perform medium work, except that he could engage in only occasional, non-repetitive overhead reaching with the right extremity and has been insulin dependent since April 20, 2013. Medium work includes "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighting up to 25 pounds." 20 C.F.R. § 404.1567(c). Cole is particularly critical of the ALJ's finding that he could lift 50 pounds at a time and carry 25 pounds two-thirds of an eight-hour workday with only a minimal reaching restriction given his severe impairments of degenerative joint disease in both the right shoulder and cervical spine.

The Court cannot conclude that the ALJ's RFC assessment is supported by substantial evidence. The only assessment of Cole's functional limitations contained in the record was an opinion from Cole's treating physician, Dr. Sheng F. Wu, which the ALJ discredits. Dr. Wu opined that since July 12, 2008, Cole has had the RFC to: (1) lift and carry a maximum of five pounds occasionally; (2) lift and carry a maximum of five pounds frequently; (3) stand less than one hour

of an eight-hour day; (4) sit less than four hours of an eight-hour day; (5) occasionally climb ramps or stairs, reach, handle, finger, or feel; and (6) never push/pull with hands and feet, climb ladders or ropes, balance, stoop, kneel, crouch, or crawl. (R. 403). The ALJ gave "little weight" to Dr. Wu's opinion because it was not consistent with Cole's medical records, including Dr. Wu's own objective and laboratory findings. (R. 20). While the consistency of the opinion with the record as a whole is relevant to evaluating how much weight to accord a treating physician's evaluation, there was no other medical opinion providing a functional assessment of Cole's ability to work.

Cole argues that the ALJ's RFC finding is not supported by substantial evidence in the record because the ALJ rejected Dr. Wu's opinion, leaving an evidentiary deficit regarding his ability to lift, carry, and reach that he was not permitted to fill with his own lay opinions of Cole's physical RFC. The Court agrees. In defending the ALJ's findings, the Commissioner argues that Cole's RFC is a determination reserved to the ALJ and that an ALJ is not required to match the RFC finding to the opinion of one or more physicians. While the RFC determination is a decision reserved to the ALJ, an ALJ is not a doctor and his limitations must find a medical or non-medical basis in the evidence. Suide v. Astrue, 371 Fed.Appx. 684, 690 (7th Cir. 2010) (stating ALJ "is not allowed to 'play doctor' by using her own lay opinions to fill evidentiary gaps in the record."). The ALJ is not free to select an RFC unsupported by the evidence.

Cole testified that he was unable to lift more than 25 pounds due to pain in his right shoulder. (R. 37). Cole also stated that he can raise his right arm over his head but not "in a rush" and in cleaning and dressing himself, he must use his right arm "down low" without raising it and "just not fast." (R. 39). The ALJ, however, rejected Cole's testimony regarding limitations in his ability to lift and carry, finding that "there is no corroboration in any of the treatment notes." (R. 22). No RFC was ever generated by the state agency physicians, and the ALJ did not utilize a consulting physician or a medical expert. On October 23, 2012, state agency physician Francis Vincent, M.D. found there was no medically determinable impairment and insufficient evidence to

-11-

determine Cole's RFC prior to his date last insured of June 30, 2012. (R. 63-64). Then, on March 28, 2013, state agency physician James Hinchen, M.D. opined that Cole had medically determinable impairments of diabetes and hypertension but there was insufficient evidence to determine Cole's RFC prior to his date last insured. (R. 71). The ALJ mentions the findings of the state agency physicians but does not explain how much weight he gave to the opinions of the state agency physicians. (R. 20). The ALJ states that he gave Cole "the benefit of the doubt" and found that Cole "has severe impairments, which reduce him to medium work with some additional manipulative limitations." (R. 20).

While an ALJ is not required to base the RFC determination solely on medical opinion evidence, an ALJ's rejection of medical opinions can leave an "evidentiary deficit" where "the rest of the record does not support" the ALJ's findings. Suide, 371 Fed.Appx. at 690 (holding that an ALJ's rejection of a treating physician's opinion created an evidentiary deficit requiring remand where other evidence in the record did "not support the parameters included in the ALJ's residual functional capacity determination."); Schmidt v. Astrue, 496 F.3d 833, 845 (7th Cir. 2007) (recognizing that an "ALJ is not required to rely entirely on a particular physician's opinion or chose between the opinions [of] any of the claimant's physicians."). In discrediting Dr. Wu, the ALJ did not identify any other evidence of record that supports the medium exertional level lifting requirements. "When an ALJ denies benefits, he must build an 'accurate and logical bridge from the evidence to his conclusion,' and he may not 'play doctor' by using his own lay opinions to fill evidentiary gaps in the record." Chase v. Astrue, 458 Fed. Appx. 553, 557 (7th Cir. Jan. 30, 2012).

The Commissioner argues that the ALJ should not be faulted for partially crediting Cole's allegations in limiting him to medium exertional work. If the ALJ had found Cole credible, the RFC lifting limitation could have been based on Cole's testimony regarding his symptoms, but the ALJ specifically rejected Cole's testimony regarding limitations in his ability to lift. (R. 19). In rejecting the testimonial and opinion evidence introduced by Cole, the ALJ failed to explain the basis for his

determination that Cole had the ability to do the lifting and carrying requirements of medium work, as opposed to light work. The VE testified that a limitation to lifting twenty-five pounds would preclude all medium level work. (R. 52-53). The Commissioner does not contest Cole's conclusion that he would have been disabled if limited to light work on July 12, 2008, when he was 57 years old. Because there is no medical opinion to support the medium work lifting and carrying restriction and the ALJ discredited Cole's testimony on this issue, it is unclear how the ALJ determined Cole's lifting and carrying restriction. The ALJ's failure to identify an evidentiary basis for the medium level lifting and carrying limitation is an error. Allensworth v. Colvin, 2016 WL 737786 at *3 (7th Cir. Feb. 25, 2016) (stating "[a] gaping hole in the record is the absence of any evidence that the plaintiff can lift or carry weight, stand or sit for six hours in an 8-hour workday, or maintain sufficient concentration to be able to perform simple, repetitive tasks–yet without those capacities he is disabled from gainful employment. Although the administrative law judge concluded that the plaintiff can perform light work for 40 hours a week, she did not indicate what evidence supported that conclusion–a fatal error."); Scott v. Astrue, 647 F.3d 734, 740 (7th Cir. 2011). Without further analysis and explanation, the Court concludes that the ALJ improperly based his RFC determination on his independent evaluation of the medical evidence. Accordingly, the RFC determination is not supported by substantial evidence and this case must be remanded for further assessment of Cole's RFC.

  **F. Hypothetical Questions**

Finally, Cole argues that the hypothetical questions the ALJ posed to the VE failed to include all the functional limitations that Cole experiences because the ALJ's RFC overestimated Cole's ability to carry, lift, and reach. The hypothetical questions posed to the vocational expert were based on the ALJ's unsupported RFC finding. Therefore, the hypothetical questions posed to the VE based on that RFC finding must be reconsidered in light of any new findings on remand.

## III.  CONCLUSION

For the reasons stated above, Defendants's Motion for Summary Judgment [22] is granted in part and denied in part.  Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed.  The Clerk is directed to enter judgment in favor of Plaintiff Eunice Cole and against Defendant Commissioner of Social Security.

**E N T E R :**

*Daniel G. Martin*

**Daniel G. Martin**
**United States Magistrate Judge**

**Dated: April 21, 2016**